1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID TROUPE,

                                   Plaintiff,

        v.

KATHERINE A. SISSON, STEVEN E.
DEMARS, ROBERT EDGINGTON,

                                   Defendants.

NO. C14-5734 RBL-KLS

**REPORT AND RECOMMENDATION**
  **Noted For:  March 6, 2015**

        Before the Court is the Motion for Summary Judgment of Defendants Katherine A.

Sisson, Steven E. Demars, and Robert Edgington.  Dkt. 19.  This 42 U.S.C. § 1983 lawsuit

arises from *pro se* Plaintiff David Troupe's claims that Defendants unlawfully restricted his

mail at the Washington Corrections Center (WCC).  Dkt. 5.  Having reviewed Defendants'

motion, supporting declarations, and balance of the record, the Court recommends that

Defendants' motion for summary judgment (Dkt. 19) be granted and Plaintiff's claims

dismissed with prejudice.

                                        **FACTS**

**A.      Plaintiff's Allegations**

        Mr. Troupe alleges that on February 10, 2015, Katherine Sisson, a secretary at WCC,

took possession of his outgoing mail and Steven E. DeMars, an investigator at WCC, removed

a letter from Mr. Troupe addressed to Kelli S.  According to Mr. Troupe, Kelli S. never received this letter and he was never given a mail rejection notice.  He claims that on May 19, 2014, he received a kite response from Sgt. Robert Edgington from the mailroom of WCC confirming that investigators do not keep the mail and that the mailroom is responsible for mail rejection.  Dkt. 5, pp. 4-5.  On June 9, 2014, Katherine Sisson confirmed in a kite that none of Mr. Troupe's mail was being withheld.  *Id.*, p. 6.

Mr. Troupe alleges that on June 13, 2014, Steven DeMars verbally threatened him with infractions.  *Id.*, p. 7.  He further alleges that in mid-June 2014, Assistant Attorney General Feulner sent him copies of outgoing mail that had been confiscated by the Defendants, but he was not given a rejection notice regarding this mail so that he could appeal.  His sister Dawn confirmed that she had not previously received the confiscated letters.  *Id.*, pp. 7-8.  On July 22, 2014, Mr. Troupe mailed another letter to his sister Dawn containing statements highly critical of Defendants and his sister never received this letter.  *Id.*, p. 8.  He also mailed a letter to a Mr. Asad on August 3, 2014, which he claims was confiscated by Defendant DeMars without a rejection notice.

On August 4, 2014, Mr. Troupe was moved to the infirmary from the intensive management unit (IMU).  He claims that this move was directed by Defendant Steven DeMars so that Mr. Troupe would be away from his witnesses in IMU and could no longer teach other inmates to file lawsuits, public disclosure requests, and witness statements.  *Id.*, p. 9.

On August 14, 2014, Mr. Trouple filed a grievance against Defendants Sisson and DeMars for retaliation and withholding his outgoing and incoming mail.  *Id.*  His grievance and subsequent appeal were denied.  *Id.*, pp. 9-10.

**B.      DOC's Mail Policy**

DOC Policy 450.100 governs the handling of offender mail.  Dkt. 19, Exhibit 1, Declaration of Robert Edgington, WCC Mailroom Sergeant, at ¶ 5 & Attachment A (DOC Policy 450.100, Mail for Offenders).  Under this policy, mail can be restricted for a number of specific reasons.  *Id.*, Exhibit 1 at ¶ 6 & Attachment A.  DOC's procedures for restricting incoming and outgoing mail are slightly different.  *Id.*, Exhibit 1, at ¶ 7 & Attachment A.

When a piece of outgoing mail is restricted, the offender is provided with written notification that includes the reason for the rejection.  *Id.*, Exhibit 1, ¶ 7 & Attachment A, at Directive VII.A.  Rejected outgoing mail is automatically reviewed by the Superintendent or the Superintendent's designee, and it does not require an appeal request.  *Id.*, Exhibit 1, ¶ 7 & Attachment A at Directive VII.  If the Superintendent upholds the restriction, the Superintendent will forward the mail to the Secretary's designee for further review.  *Id.*

In addition to the restriction of individual pieces of mail, DOC policy allows for the restriction of an offender's ability to write a particular person or group for a number of reasons. *Id.,* Exhibit 1, ¶ 8 & Attachment A, at Directive I.C.  These reasons include that the recipient requested that the offender not be allowed to write him or her; the recipient is a minor and the minor's parent or guardian requested that the offender not be allowed to write the minor; a court order requires the restriction; or another specific justification warrants the restriction under DOC policy.  *Id.*

**C.      Handling of Mr. Troupe's Mail**

Mr. Troupe was housed at the WCC from November 1, 2013, until March 6, 2014, and from March 21, 2014, until October 8, 2014.  Dkt. 19, Exhibit 2, Declaration of Timothy J.

Feulner, ¶ 2 & Attachment A (Legal Face Sheet).  Mr. Troupe has since returned to WCC.  *Id.*
The WCC is the state's reception center for adult men and the mailroom at WCC processes a
large volume of both incoming and outgoing mail.  *Id.,* Exhibit 1, Edgington Decl., at ¶ 3.   In a
typical day, the mailroom processes approximately 1,500 total pieces of mail.  *Id.*

Since January 1, 2014, two pieces of Mr. Troupe's outgoing mail were restricted by the
WCC mailroom.  *Id.,* Exhibit 1, at ¶ 9.  One piece of outgoing mail was restricted on May 20,
2014.  The intended recipient was identified as "FYEO/GFTW," and the mail was restricted
because it contained sexually explicit material.  The second piece of mail was restricted on
June 9, 2014.  This piece of mail was sent to Candace Germeau, an investigator at the Clallam
Bay Corrections Center (CBCC).  It was restricted because Mr. Troupe had been issued a
Communication Cessation Order that ordered him to stop corresponding with Investigator
Germeau.  This piece of mail was sent on the same day that the Order was issued. There is no
record of the WCC mailroom restricting or withholding any other mail sent by Mr. Troupe
during this time period.  *Id.*

Mr. Troupe has been infracted for misuse of the mail in the recent past.  In May 2014,
Sergeant Edgington inspected an envelope from Mr. Troupe that contained another envelope
that was addressed to "Dawn Soap."  Dkt. 19, Exhibit 1, Edgington Decl., at ¶ 11.  In the
second envelope, Sergeant Edgington found a handwritten letter with staff names and home
addresses.  The letter had instructions for the recipient to place ads of a sexual nature on a
website.  *Id.*  Sgt. Edgington issued Mr. Troupe a serious infraction for violating WAC 137-28-
220(102), Failure to follow any written rules or policies adopted by the institution and not
specified within this chapter or in local disciplinary rules; WAC 137-28-220(303),

1   Unauthorized use of mail or telephone; and WAC 137-25-030(739), Possession of personal

2   information about currently employed staff, contractors, or volunteers, or their immediate

3   family members, not voluntarily given to the offender by the individual involved; including,

4   but not limited to: Social Security numbers, unpublished home addresses or telephone

5   numbers, driver's license numbers, medical, personnel, financial, or real estate records, bank or

6   credit card numbers, or other like information not authorized by the court or the

7   superintendent.  *Id.,* Exhibit 1, at ¶ 11 & Attachment D (Initial Serious Infraction Report). As

8   of July 25, 2014, Mr. Troupe has been directed to cease all telephone and mail communication

9   with his sister Dawn.  *Id.*, Exhibit 1, Attachment C.

10          Due to Mr. Troupe's persistent misbehavior, he was under investigation at the time by

11  WCC's Intelligence and Investigation Unit (IIU).  *Id.*, Exhibit 3, Declaration of Katherine

12  Sisson, WCC IIU Office Assistant, at ¶ 5.  As a part of this investigation, Mr. Troupe's mail

13  was monitored by IIU staff.  *Id.*, Exhibit 3, at ¶ 5.  When IIU staff monitors an inmate's mail,

14  an IIU staff member goes down to the mailroom to gather the mail that is going to be reviewed.

15  *Id.*, Exhibit 3, at ¶ 3.  This mail is then taken back to the IIU office and copied.  The original

16  piece of mail is then returned to the mailroom either the same day or the next business day.  *Id.*

17                              **STANDARD OF REVIEW**

18          The Court shall grant summary judgment if the movant shows that there is no genuine

19  dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed.

20  R. Civ. P. 56(a).  The moving party has the initial burden of production to demonstrate the

21  absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,*

22  263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  To carry this burden, the moving party need not

introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

## DISCUSSION

### A.    Personal Participation Defendant Robert Edgington

There is no vicarious liability under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675-76 (2009). Therefore, a plaintiff must show that the defendants personally participated in the alleged unconstitutional action. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). To be liable, a person must do an affirmative act, participate in another's affirmative act, or fail to perform an act that the person is legally required to do. *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978). "A supervisor is only liable for the constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045.

Mr. Troupe alleges that certain pieces of mail were restricted without notice and that such notice was required by DOC policy. Sgt. Edgington states that he did not restrict or confiscate the mail at issue in this lawsuit. Dkt. 19, Exhibit 1, at ¶ 9. Mr. Troupe alleges only that Mr. Edgington is the mailroom sergeant and responded to Mr. Troupe's kite. This is not sufficient to show that Sgt. Edgington personally participated in the alleged constitutional violations. Mr. Troupe has provided no evidence that Sgt. Edgington knew or otherwise participated in any restriction of his mail.

Therefore, it is recommended that Defendant Robert Edgington be dismissed from this case.

**B.       Confiscation of Outgoing Mail**

In his complaint, Mr. Troupe alleges that several pieces of mail were restricted or confiscated by DOC because people to whom they were addressed (his sister Dawn, Kelli Sawyer, and Mr. Asad) never received the letters he sent. However, there is no evidence, other than Mr. Troupe's hearsay statements that he was told they never received the mail, to support this claim. On the other hand, the record reflects that DOC has no record that the pieces of mail described by Mr. Troupe were restricted. Dkt. 19, Exhibit 1, Edgington Decl., at ¶ 9. According to Sgt. Edgington, when mail is restricted, a mail restriction notice is provided to the offender and the mail restriction is automatically reviewed for outgoing mail. *Id.*, Exhibit 1, Attachment A.   When Mr. Troupe's mail was restricted in the past, he received mail rejection notices. *Id.*  According to DOC records, Mr. Troupe's mail was restricted on only two occasions on May 20, 2014 (addressed to "FYEO/GFTW") and on June 9, 2014 (addressed to Candace Germeau). *Id.*

1    There is no evidence that any of the Defendants were responsible for any mail not

2    reaching its final destination.  Moreover, even if it is assumed that the mail was confiscated,

3    Mr. Troupe fails to establish a viable constitutional claim.

4        **1.        Fourteenth Amendment Due Process**

5        The Due Process Clause of the Fourteenth Amendment prevents states from

6    "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const.

7    Amend. XIV, § 1.  There is a limited liberty interest in inmates' ability to correspond by letter.

8    *Procunier v. Martinez*, 416 U.S. 396, 418 (1974), *overruled on other grounds by Thornburgh*

9    *v. Abbot*, 490 U.S. 401 (1989).  There are procedural protections required to protect this liberty

10   interest, including providing notice to the inmate of the restriction and the opportunity to two-

11   level review of the restriction.  *See Procunier*, 416 U.S. at 418-19; *Krug v. Lutz*, 329 F.3d 692,

12   697-98 (9th Cir. 2003).  These procedural protections are designed to prevent erroneous

13   deprivations of the protected liberty interest.  However, an inmate only establishes a violation

14   of his due process rights related to the failure to provide notice of a mail restriction when the

15   lack of notice is pursuant to a prison policy.  *See Sorrels v. McKee*, 290 F.3d 965, 972 (9th Cir.

16   2002).

17       Mr. Troupe has not established that the lack of notice of the alleged restriction of his

18   mail was pursuant to any prison policy.  In fact, DOC policy provides for notice of the

19   restriction of outgoing mail.  Dkt. 19, Exhibit 1, Attachment A.  Therefore, his due process

20   claims should be dismissed.

21   //

22   //

**2.      First Amendment**

Inmates enjoy a limited First Amendment right to send and receive mail.  *See Thornburgh v. Abbott,* 490 U.S. 401, 407 (1989).  Occasional and isolated instances of interference with an inmate's mail do not rise to a violation of the First Amendment absent evidence of an established practice or policy of interfering with the inmate's mail.  *See e.g.*, *Davis v. Goord*, 320 F.3d 346, 351-52 (2d Cir. 2003); *Stevenson v. Koskey*, 877 F.2d 1435, 1440-41 (9th Cir. 1989); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990); *Banks v. York*, 515 F. Supp. 2d 89, 108 (D.C. 2007).

Mr. Troupe alleges that several (it is unclear from his complaint exactly how many letters he claims were sent but not received) letters were restricted over a period of six months. Dkt. 5.  However, as noted above, the evidence reflects that Mr. Troupe's mail was restricted on only two occasions since January 1, 2014 and that he received rejection notices on both occasions.  The record also reflects that Mr. Troupe has been infracted for improper communications with his sister Dawn and that there has been a communication cessation order in place relating to telephone or mail correspondence with her since July 25, 2014.  Dkt. 19, Exhibit 1, Edgington Decl., at ¶ 9 and Attachments C and D.

Mr. Troupe also fails to provide evidence linking any of the three named Defendants to the alleged confiscation of any mail or to establish that they intended to restrict his mail. Without evidence of such intent, these isolated instances of alleged inference with Mr. Troupe's mail do not establish a First Amendment violation.

//

//

**C.**     **Transfer to Infirmary**

Mr. Troupe alleges that Defendant DeMars moved him to the infirmary from the IMU to prevent Mr. Troupe from "helping teach inmates how to file law suits, public disclosures, [and] witness statements."  Dkt. 5, at 9.  The Court interprets this allegation as one claiming that Defendant DeMars moved Mr. Troupe to the infirmary in retaliation for assisting other inmates.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that inmate's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir.2005).  The protected conduct must be a "substantial" or "motivating" factor behind the defendants' conduct.  *Pratt v. Rowland,* 65 F.3d 802, 807 (9th Cir. 1989).   A plaintiff must show defendant's actions would be sufficient to chill or silence a person of ordinary firmness from future First Amendment activities, *Rhodes*, 408 F.3d at 568–69), *citing Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir.1999), and did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985).

Although an inmate has no personal right to offer legal assistance to other inmates to ensure their access to the courts (*see Blaisdell v. Frappiea*, 729 F.3d 1237, 1245 (9th Cir. 2013), a prison must allow prisoners to assist one another unless there is available to prisoners a reasonable, alternative means of legal assistance.  *Munz v. Nix*, 908 F.2d 267, 269 (8th

Cir.1990) (*citing Johnson v. Avery*, 393 U.S. 483, 490 (1969)).  In addition, while it is clear that Mr. Troupe has no right to a certain housing status, an inmate's housing status cannot be used as a means of retaliation against him for exercising his First Amendment rights.  *See Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir.1985) (holding that while inmate did not have a constitutional right to certain housing in prison, defendants retaliated against him when they used his housing status to punish him for protected conduct).

However, a retaliation claim is not stated where the prisoner does not allege that the defendants' actions caused him some injury, *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir.2000), or, in the case of alleged retaliatory transfer, if the decision may be upheld on a constitutionally valid basis, *Sher v. Coughlin*, 739 F.2d 77, 82 (2d Cir.1984).  A retaliation claim is also not stated where the inmate's protected conduct is not, in fact, the substantial or motivating factor behind the defendants' conduct.  *Pratt,* 65 F.3d at 807.

Here, there is no evidence that Mr. Troupe was engaged in protected conduct as there is no constitutional right to offer legal assistance to other inmates.  There is no evidence that the inmates in IMU whom Mr. Troupe was assisting had no reasonable, alternative means of legal assistance.  There is no evidence that Mr. Troupe's right to access was impaired by his transfer.  And, there is no evidence that Mr. Troupe was damaged in any way by being moved from the IMU to the infirmary.  Thus, it is recommended that his claim of retaliation be dismissed.

**D.      Qualified Immunity**

Under the doctrine of qualified immunity, prison officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982).  A civil rights plaintiff opposing a claim of qualified immunity must establish the existence of a constitutional violation, clearly established law to support the claim, and that no reasonable official could believe their conduct was lawful.  *Pearson v. Callahan*, 555 U.S. 223 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).   Mr. Troupe has failed to raise material issues of fact relating to his constitutional claims and therefore, it is not necessary to address the question of qualified immunity.

**E.      Injunctive Relief**

Injunctive relief is a drastic remedy that should only be granted sparingly.  *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008); *Rizzo v. Goode*, 426 U.S. 362, 378-79 (1976).  To be entitled to a permanent injunction, the party seeking the injunction must actually succeed on the merits.  *See e.g.*, *Valley View Health Care Inc. v. Chapman*, 992 F. Supp. 2d 1016, 1042 (E.D. Cal. 2014).  As noted above, Mr. Troupe has failed to establish a violation of his constitutional rights and therefore, he is not entitled to injunctive relief.

**CONCLUSION**

Based on the foregoing, the undersigned recommends that Defendants' Motion for Summary Judgment (Dkt. 19) be **GRANTED;** and that Plaintiff's claims against Defendants be **dismissed with prejudice.**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).

1       Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the

2 matter for consideration on **March 6, 2015**, as noted in the caption.

3       **DATED** this  11th  day of February, 2015.

Karen L. Strombom
United States Magistrate Judge